Camp *vs.* The State.

No. 58.—BURTON CAMP, plaintiff in error *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] An indictment which states the offence in the terms and language of the penal code, or so plainly and distinctly that the nature of the offence may be easily understood by the jury, is sufficient.

[2.] The offence of an assault with intent to commit a rape, if stated in the language and terms of the penal code defining the offence of rape, need not be called in the indictment a misdemeanor.

[3.] On an indictment for an assault with intent to commit a rape, evidence that the person charged to have been injured is in fact a common prostitute, or evidence of reputation that she is a woman of ill fame, may be submitted to the jury, to impeach her credibility, and disprove her statement that the attempt was forcible and against her consent.

Indictment for an assault with intent to commit a rape. Tried before Judge DOUGHERTY. In Gwinnett Superior Court. March Term, 1847.

The prisoner was convicted, and a motion made for new trial, and also in arrest of judgment.

For the grounds in support of each of these motions, and the questions made, the reader is referred to the opinion delivered by the Supreme Court.

In reference to the ground for new trial, predicated upon that part of the charge of the Court to the jury, ruling that the testimony of the witness for the prisoner as to the want of chastity of Cynthia Emeline Davis, upon whom the assault was alleged to have been made, was admitted solely to enable them to judge of the intention of the prisoner, it is thought proper to state, that said Cynthia Emeline Davis was the principal State's witness, that she alone proved the offence charged, and that on the part of the prisoner it was proven that she was a woman of ill fame.

HILLYER, JACKSON & SIMMONS, for the prisoner.

WM. H. HULL, representing Sol. Gen'l. HARRIS, for the State.

Mr. HULL, submitted the following positions:

The character of a witness for want of chastity, does not impeach her veracity. *Roscoe Crim. Ev.* 165; 1 *Starkie on Ev.* 211, *note.*

It was lawful for the judge, in his discretion, to permit the Solicitor General to ask a juror as to his place of residence.

It is no ground for a new trial, that a physician is called to see a sick juror in the jury room, when it appears that nothing was said by him about the case.   *Graham on New Trials,* 92.

The indictment was good.   *Prince,* 625.

. The words violently and feloniously, are not necessary under our penal code.   *Prince,* 658.

A new trial will not be granted in case of felony for the misdirection of the judge.   *Graham on New Trials,* 506, 507, 516; *Chitty Crim. Law,* 654, and notes.

When the testimony of the prisoner was admitted to the jury, it is no ground of new trial that the Court gave a wrong effect to it in the charge.

*By the Court.*—NISBET, J., delivering the opinion.

[1.]   The first exception in this case, is founded on the refusal of the Court to grant a new trial, because the indictment does not charge the offence to have been committed "violently and feloniously."

The indictment charges the offence substantially in the language of the code defining it, and that is sufficient.   "Rape is the carnal knowledge of a female, forcibly and against her will."   *Hotchk.* 709.   An attempt to commit a rape, the offence for which the defendant was indicted, is an attempt to know a female forcibly and against her will.   Our code does not, in so many words, make this an offence; it does, however, by implication, because it prescribes a punishment for an attempt to commit a rape.   There was no necessity to define *an attempt to commit a rape.*   Rape being defined, the attempt to commit a rape is included in that definition.   In pleading, therefore, the offence of *an attempt to commit a rape* is to be described according to the definition of rape.   If, in the description of it, the offence is stated in the terms and language of the penal code, or so plainly that the nature of it may be easily understood by the jury, it is sufficient; for the legislature has declared that, "Every indictment or accusation of the Grand Jury shall be deemed sufficiently technical and correct, which states the offence in the terms and language of this code, or so plainly that the nature of the offence charged may be easily understood by the jury."   *Hotchk.* 787.   The statement of the offence in this indictment, is, that the defendant, *with force and arms,* in the county aforesaid, in and upon one Cynthia Emeline

Camp *vs.* The State.

Davis, a white female, in the peace of God and said State then and there being, did make an assault and her the said Cynthia Emeline Davis, did then and there beat, wound and ill treat, with intent, her, the said Cynthia Emeline Davis, *forcibly and against her will, then and there, carnally to know and feloniously to ravish,* and other wrongs, &c." The prime elements of the crime are stated, to wit, with force and arms, *forcibly and against her will carnally to know* the prosecutrix. As to this exception, we hold the indictment good.

Another ground upon which the defendant sought to arrest [2.] the judgment, is, that the indictment charges him with the offence of " *an attempt to commit a rape,*" when it should have designated the offence, a *misdemeanor,* because our penal code declares, that attempts to commit the offences in it defined, shall be indicted as misdemeanors. The Court below overruling this ground, the plaintiff in error excepted. We do not think the circuit judge erred in this particular, for two reasons.

1. Because the code having prescribed a specific penalty for an assault with intent to commit a rape, thereby created it an independent offence, and took it out of the operation of the general clause referred to.

2. If this is not so, then it is sufficient to say that this is an indictment for misdemeanor. The name given to it in the bill, does not characterize the offence; the description does characterize it. It may be, and it is, called an assault with intent to commit a rape, and yet may be, and by the description in this case is, a misdemeanor. Again, it is claimed that the Court below erred in this, that it permitted the Solicitor General, when each juryman was called, to inquire of him in what part of the county he resided; because, says the counsel for the plaintiff in error, the law permits no such question to be put to test the competency of the juror. The *reason* is true, and yet we do not think that there is any thing in the exception; because it appears from the statements in the bill, that this was no judicial act; it was permitted, because not objected to, as mere matter of convenience. The question of right to put such a question was not made, and not decided by the presiding judge; we have, therefore, nothing touching this exception to review.

The only other ground of error found in this bill, and urged by [3.] counsel, grows out of the charge of the Court to the jury. The charge of the Court is stated in the bill of exceptions in the

following words : " The Court charged the jury, among other things, that one mode of attacking the credit of a witness, was to produce her neighbours or acquaintances, who were acquainted with the character of the witness in the neighbourhood, for truth and veracity, and who would swear, that from that knowledge, they would not believe her on oath in a court of justice. That in prosecuting that mode of attack, the. testimony of the witness, as to the want of chastity in the female assaulted, was admitted *solely* to enable them to judge of the *intention* of the prisoner." This instruction was given to the jury, as to the force and effect of the testimony which had been admitted going to show that the female assaulted, was a person of ill fame. The plaintiff in error charges error in these instructions, in this, that the effect of such testimony is not *solely* to enable the jury to judge of the intention of the defendant in committing the assault; but its further effect is, to impeach the credibility of the witness, who was the person alleged to be injured, by disproving her statements that the assault was made *forcibly and against her will.*

We agree with the learned judge, that evidence of the want of chastity in the prosecutrix, may be admitted to show the intention of the defendant in perpetrating the assault, that is, to show that he did, or did not, intend *forcibly and against her will*, to commit a rape on the prosecutrix. But we do not agree with him, that it is admitted *solely* for this purpose. We think that evidence of ill fame, of general character for want of chastity, may be admitted for the further purpose of enabling the jury to judge of the truth of the material facts stated by her, as a witness, to wit, that the attempt was *forcible and against her will.*

We are not now to disturb the well established rule, as to the manner in which the credibility of a witness may be attacked for want of general character for truth and veracity. This question is to be determined upon principles peculiar to this kind of case. The rules of evidence in indictments for rape, or an assault with intent to commit it, are different from what they are in *ordinary* cases. The offence is peculiar. Lord Hale says, that this accusation is easily made, hard to be proved, and harder to be defended by the party accused, notwithstanding his innocence. 1 *Hale,* 635, 636. The act of cohabitation, because of a sense of decency which does not wholly forsake the most abandoned of either sex, is generally in secret. Hence the very general absence of direct testimony. The law admits the testimony of the prosecutrix, whilst

Camp *vs.* The State.

it excludes the testimony of the accused.   Men are therefore put in the power of abandoned and vindictive women, to a great extent.   At the same time, so enormous is the crime against society, so destructive of those rights of women which civilized society holds so sacred and guards so vigilantly, that the rule which allows her testimony, cannot be condemned.   The defendant, however, in consideration of these things, is let in, in his defence, to some privileges, which are not always allowed to persons accused of crime.   The degree of evidence, which in this case ought to satisfy the jury of the defendant's guilt, depends upon the circumstances of each case, and cannot be reduced to specific rules.   3 *Chitty Crim. Law,* 572.

The specific inquiry before us, is this : on indictments for rape, or an assault with intent to commit a rape, can evidence of general character for want of chastity be admitted to impeach the testimony of the female charged to have been injured ?   Can the jury be allowed to infer from that testimony, that her statement that the attempt was *forcible and without her consent,* is not true ? We think the testimony may be admitted for the purpose stated, and that the jury may consider of it, as impeaching or not, the credibility of the female charged to be injured.   We are not to be understood as determining, that want of chastity generally, can be admitted to discredit a female witness; only can it be done in indictments for rape, or for an attempt to commit a rape, or perhaps in actions for damages for seduction and criminal conversation.

Blackstone says : " The party ravished may give evidence upon oath, and is in law a competent witness, but the *credibility of her testimony, and how far forth she is to be believed,* must be left to the jury, upon the *circumstances of fact* that concur in the testimony. For instance; if the witness be of *good fame,* if she presently discovered the offence and made search for the offender, if the party accused fled for it, &c. &c., these and the like circumstances which give greater probability to her evidence.   But, on the other side, if she be of *evil fame,* and stand unsupported by others, &c. &c., these and the like circumstances *carry a strong, but not conclusive presumption that her testimony is false or feigned."*   4 *Black. Com.* 213. This authority puts the credibility of the witness, among other things in issue, on the fact of *ill fame—if she be of evil fame,* that is a fact or circumstance, which carries with it a *strong presumption* that her testimony is *false or feigned.*

I may safely assert that this authority is founded in the clearest reason. The female asserts in her testimony, that the attempt was *forcible, and without her consent.* Now, who is more likely to consent to the approaches of a man, the unsullied virgin and the revered, loved and virtuous mother of a family, or the lewd and loose prostitute, whose arms are opened to the embraces of every coarse brute, who has money enough to pay for the privilege? The fact of assent, may in reason, be well left to the jury, upon proof of ill or evil fame. Again, no evil habitude of humanity so depraves the nature, so deadens the moral sense, and obliterates the distinctions between right and wrong, as common, licentious indulgence. Particularly is this true of women, the citadel of whose character is virtue ; when that is lost, all is gone; her love of justice, sense of character, and regard for truth. She esteems herself as put to the ban of society, and as incapable of deeper degradation.

It is settled in England, that you may submit to the jury evidence that the prosecutrix is in fact a common prostitute, in these cases. 1 *East Crown Law*, 444, 445; *Roscoe Crim. Ev.* 708. So, also, *reputation* of general bad character, is admissible. It seems that testimony of specific acts of lewdness, is not admissible. *Rex* vs. *Clarke*, 2 *Starkie N. P.* 334; *Rex* vs. *Barker*, 3 *Car. & Payne*, 467; *Rex* vs. *Hodgson*, *Russ. & R. R. C. C. R.* 211. See also this question discussed at length, in *The People* vs. *Abbott*, 19 *Wend. R.* 192. See, also, 6 *Car. & Payne*, 562; 14 *Mass. R.* 387; *Contra.* 3 *Pick.* 194.

. Let the judgment of the Court below be reversed.