## JOHNSON *v.* THE STATE.

PER CURIAM. 1. The evidence being insufficient to support the verdict finding the defendant guilty, it was contrary to law.

2. In view of the holding in the preceding headnote, the assignments of error predicated upon the charge of the court need not be considered.

*Judgment reversed. All the Justices concur, except Russell, C. J., dissenting.*

No. 4255. FEBRUARY 28, 1925.

Indictment for rape. Before Judge Searcy. Pike superior court. February 23, 1924.

At the October term, 1922, of the superior court of Pike County the defendant was indicted for the offense of rape. On October 10, 1923, the jury trying the case returned a verdict of guilty, with recommendation to mercy, and fixed the penalty at from one to four years. The defendant filed a motion for a new trial upon the three usual general grounds, and before the hearing amended his motion by assigning error upon four excerpts from the charge of the court. The female alleged to have been raped testified that she and the defendant were returning from the home of a neighbor, where they had been sitting up with a corpse, at about 2 o'clock in the morning of April 30, 1922. After she and the defendant had traveled a short distance from the house where the neighbor was dead, the defendant stopped the Ford coupé in which they were riding and tied her hands behind her back. He had a pistol and told her that he would kill her, "and a whole lot of things like that." Defendant threatened her that night and every time he saw her. She did not consent for the defendant to have intercourse with her. The intercourse was in the car, between Mr. Blanderburg's and Mr. Ben Turner's. Defendant came on to Mr. Ben Turner's, where witness lived, and got on the porch. He told her she had better not tell it, that he knew he would die if she told it, and he would do his part of the killing. She next saw defendant on Sunday morning, after the rape had been committed, about 11 or 12 o'clock. She is the mother of a child born on the

17th day of December, in Macon, Georgia. She rode to Macon in an automobile. On cross-examination her testimony was substantially the same as on direct examination. She testified that the defendant came to see her on Sunday afternoon, after the rape in the early morning, and again on Wednesday night, and that he took her to a picnic on Friday. She did not tell any one about the occurrence from April 30 until August 9; then she told her uncle. He was the only one she had to tell, as her father and mother were dead. On re-direct examination she testified that she was afraid to tell any one, because the defendant had threatened to kill her if she did, and she was afraid to tell it.

Dr. R. A. Mallory, a witness for the State, testified that he had treated the female alleged to have been injured, for throat trouble; that he thought it was possible for a woman to get with child in a Ford coupé, and that it is possible for a man to rape a woman in a Ford coupé; that if a woman is with child and goes to where the child weighs 7-½ pounds, and measures up to the full requirements of a fully developed child, the woman would have been pregnant between 270 and 290 days; that it generally takes 280 days; and that a ride of sixty miles in a Ford car might have a tendency to hasten the birth of a child. Ben Neal testified that he was the uncle of the female, and that early in August she made complaint to the witness about the conduct of the defendant towards her.

Dr. Ben Johnson, of Macon, called as a witness for the defendant, testified: He is a practicing physician, living in Macon, Georgia. He knows the female; he first saw her on December 16, 1922, where she was in an institution in Macon caring for the confinement of women. When he diagnosed her condition on that day he found that she had gone the full term of pregnancy, and was ready to be delivered at any time. The usual period of pregnancy is 280 days, but this is not absolutely certain. On December 17, 1922, he attended the birth of the child, and observed the developments of the child in strict detail according to the rules of the institution; and judging from the measurements made, the mother had been pregnant for nine calendar months. In his opinion the pregnancy of a baby born Dec. 17 must have antedated April 30, 1922, by from 30 to 45 days. He further testified that intercourse two or three days before a monthly period will not totally prevent

the appearance of the period; that a ride of sixty miles in a Ford car might tend to hasten the birth of a child, but it would set up in 24 or 48 hours.

Ben Turner, a witness for the defendant, testified that he opened the door for the female when she came in about one o'clock on the night of the alleged rape; that the defendant came up on the porch, and witness did not notice anything wrong; that the female did not appear nervous or excited, and witness saw nothing wrong with her; that defendant brought the female home from the church where the funeral was held, came back again that afternoon and again that night, and came back two or three times during the week, and carried her to a picnic on Friday, and their conduct towards each other was all right so far as witness knew. Mrs. Ben Turner testified to substantially the same state of facts, and also that she helped the female prepare "something special" for the defendant on the day of the picnic. The defendant introduced numerous witnesses who testified to the apparently friendly relation existing between the defendant and the female after the time of the alleged rape. The defendant made a statement in which he denied that he had wronged the female.

*Culpepper & Murphy* and *R. C. Johnson,* for plaintiff in error.

*George M. Napier, attorney-general, E. M. Owen, solicitor-general, T. R. Gress, assistant attorney-general, E. J. Reagan,* and *E. F. Dupree,* contra.

BECK, P. J., concurring specially. I do not suppose that any member of this court, in a proper case, would hesitate to affirm the judgment and verdict of guilty against a man shown to be guilty of the offense of rape. I concur in the judgment reversing the judgment of the court below, because I am decidedly of the opinion that there was not sufficient evidence to show that the defendant was guilty. No man should be punished for a crime, unless there is sufficient evidence under the law to establish his guilt.

RUSSELL, C. J., dissenting. Conceding that the female is not corroborated, I dissent altogether from the proposition that corroboration is required as a matter of law to authorize a conviction for rape where the alleged injured female is the sole witness. If a jury, after seeing and hearing a female witness who testifies that the accused had sexual intercourse with her forcibly and against her will, believes her, no corroboration is necessary. That is the

rule of our law. The testimony of a single witness is generally sufficient to establish a fact. Penal Code (1910), § 1017. In that section the exceptions to the general rule are all stated; and unless a female who is outraged and by force and violence and without her consent robbed of chastity, which is the most priceless jewel of woman, can be said to be an accomplice, one witness is sufficient to establish the fact. It is a settled rule of general jurisprudence that in case of conflict of the decisions of the same court, the oldest shall control. The first utterance of this court upon the necessity for corroboration in cases of rape is contained in *Camp* v. *State,* 3 *Ga.* 417, in which the opinion was delivered by Judge Nisbet, a master of law, logic, and expression. After dealing with various considerations which may affect the credibility of the prosecutrix, he says: "The degree of evidence which in this case ought to satisfy the jury of the defendant's guilt depends upon the circumstances of each case, and can not be reduced to specific rule. 3 Chitty Criminal Law, 572." As a member of the Court of Appeals it was my privilege to deliver the opinion of the court in *Fields* v. *State,* 2 *Ga. App.* 41 (58 S. E. 327). I have seen no reason to change my conviction upon the principles of the law of evidence here involved. In some cases where the testimony of a prosecutrix and the circumstances seem to require corroboration, it is the right of the jury to discredit the prosecutrix if there is no corroboration. But a rule which precludes the jury from writing the truth in their verdict, if they believe that the prosecutrix has sworn the truth, is an invasion by the court of the prerogative of the jury. As pointed out by Judge Nisbet in the *Camp* case, offenses of this kind are generally committed in secret. Furthermore, I am of the opinion that a speedy complaint of an alleged rape is just as consistent with the fact that the offense is feigned or false and that the complaint springs from some fancied wrong, aside from an intercourse which may have been consented to, as is the fact that silence, even though this great wrong has been committed, may spring from the natural modesty and timidity of an inexperienced and virtuous woman who may not wish to be scandalized forever by the mere mention of her name in connection with that of her assailant. If the jury can judge in the first instance, they have equal right to pass on the circumstances of silence, as they did in this case, in case the prosecutrix were silent.

General knowledge that the sweet flower of her womanhood had been crushed, bruised, and destroyed, even though it was dashed to earth by force, would not enhance the chances of matrimony. The canons of Blackstone and the dicta of Matthew Hale are entirely impotent under a proper construction of the laws of Georgia. The cautions to be given a jury as to the corroboration necessary to support ·the testimony of a female who charges she has been raped are altogether inapplicable in Georgia, under the provisions of our dumb act. Civil Code (1910), § 4863. The law evolves with the ages, changes with changing conditions to meet conditions as they arise for solution. I see no more reason why a virtuous female of irreproachable character, who swears that the sanctity of her person was violated against her will and by force which she was powerless to prevent, should not be believed, than that a man who testifies that he was three times fired upon by an assailant in the attempt to murder him, but happened not ·to be hit, should be required to produce corroborative circumstances before the assailant can be convicted of assault with intent to murder, shooting at another, or any other offense.