## Isaac Day *vs.* Daniel Stickney & others.

For the purpose of impeaching a material witness, it is competent in this commouwealth for the party against whom he has testified to prove declarations made by the witness out of court, showing bias or hostile feeling against him in regard to the matter involved in the case on trial.

In an action upon a bond which was given by several persons to indemnify the obligee against loss from signing a guardian's bond as surety, the guardian, A., was called as a witness for the plaintiff, and on cross-examination denied that he had said, in words or in substance, that he meant to get the money on this bond of B., who was one of the defendants, so as to get back the rent he had paid B. for a house. A witness called for the purpose of contradicting and impeaching A. was asked, " If A. gave you any notice in regard to this bond, or made any statement in regard to holding you or B., state what it was." This question was objected to and excluded. The witness was asked " Whether A. said anything to you about intending to get this out of B." This question also was objected to and excluded. *Held,* that the defendants were entitled to a new trial.

If a promissory note is taken from a judgment debtor for the amount due upon an execution, and the execution is thereupon discharged, this is *prima facie* evidence of payment of the execution.

Payment of a judgment by giving a promissory note for the amount due thereon, and taking a discharge of the execution, will entitle the person making such payment to maintain an action against one who has agreed to indemnify him against liability on the claim for which the judgment was rendered; and the defendant in such action has no ground of exception to an instruction to the jury that, if the settlement of the execution was not fraudulent it was immaterial whether the plaintiff was a man of property or not.

CONTRACT upon a bond given by the defendants to the plaintiff in the penal sum of $25,000, dated March 27th 1854, the condition of which was that " Whereas . . . . . . Daniel Day has executed a bond with John A. Parks as principal, and Edward Bailey as surety, to Arnold Blaney, Esq., judge of the probate of wills and granting administration within the county of Lincoln in the state of Maine, of even date herewith, for the sum of twenty-five thousand dollars, which bond is upon the condition that said John A. Parks shall faithfully perform all the requirements therein contained, as guardian of William M. Groton and James R. Groton, minor children and heirs at law of the estate of James R. Groton, late of Waldoboro', in the county of Lincoln and state of Maine, deceased; now there‹ fore if the said John A. Parks shall save the said Daniel Day

harmless on said bond, then this obligation shall be void; otherwise to remain in full force and effect."

The declaration alleged that said John A. Parks had not saved the plaintiff harmless on said bond therein referred to, but that a judgment had been recovered thereon in the supreme court of Maine by the judge of probate for the county of Lincoln against said Parks, Bailey and the plaintiff, and execution had been issued thereon for the sum of $23,129.21, as damages, and $50.35, costs, which execution had been fully satisfied by the plaintiff, by the payment of $23,913.73; that being the amount of the judgment, with interest thereon.

At the trial in this court, before *Chapman*, J., the bond, the record of the judgment in Maine, and the original execution which issued thereon having been put in evidence, Arnold Blaney, the former judge of probate for the county of Lincoln, to whom the guardian's bond was given, and the successor of Parks as guardian of the minor children, was called as a witness, and testified that he had resigned his office of judge of probate; that Parks rendered two accounts as guardian, which were produced, and then resigned, and the witness was appointed in his stead; that the execution was issued for the benefit of the witness, as guardian; and that Parks had become insolvent at the time of resigning his office. A discharge of the execution by Blaney, dated November 24th 1863, was put into the case. The evidence tended to show that Day paid Blaney at the time $1000 in cash, gave him a note with a surety for $1000 payable in a year, and gave him his negotiable note payable on demand for $21,913.73, this making the whole amount due upon the execution, and assigned to him the defendants' bond of indemnity. This action is prosecuted by Day at his own expense for Blaney's benefit.

The plaintiff called Parks as a witness, to prove the execution of the guardian's bond. On cross-examination, he testified among other things that he did not tell Rice, one of the defendants, or any one, in words or in substance, that he meant to get the money on this bond of old Fawcett, so as to get back the rent he had paid him for the Marlboro House. [Fawcett was

one of the defendants.] The defendant Rice was called by his counsel as a witness, and was asked, " If Mr. Parks gave you any notice in relation to this bond, or made any statement in regard to holding Mr. Fawcett, state what it was." This question was objected to and ruled out. He was then asked " Whether he said anything to you about intending to get this out of old Fawcett." This also was objected to and ruled out.

The defendants introduced evidence of the pecuniary condition of the plaintiff at the time of the giving of the bond and since.

The judge instructed the jury, among other things, that the giving of the note by the plaintiff and taking the discharge of the execution were *prima facie* evidence of payment; and that, if the settlement of the execution was not fraudulent, it was immaterial whether Day was a man of property or not; and the payment of the execution in the manner above stated was sufficient to enable him to maintain this action.

The jury returned a verdict for the plaintiff, and the case was reserved for the consideration of the full court.

*J. S. Abbott*, for the defendants.

*H. W. Paine & R. D. Smith*, for the plaintiff.

WELLS, J. The witness Parks had procured this bond from Fawcett and others in Massachusetts to indemnify Day in becoming surety, in Maine, upon the probate bond of Parks, as guardian there of certain minors. At the trial Parks was an important witness for the plaintiff; the execution of the bond in suit being proved mainly by his testimony. To show that he was not a fair witness, but was hostile to the defendants, or under a strong bias of feeling or purpose adverse to them, which ought to affect the degree of credit to be given to his testimony, he was asked, in cross-examination, whether he had told " Rice or any one, in words or in substance, that he meant to get the money on this bond of old Fawcett, so as to get back the rent he had paid him for the Marlboro House." This he denied. The defendants offered testimony to contradict him in this particular, and impeach his credit. This testimony was excluded, on the ground that it related to a collateral matter. But the

court, upon consideration, are of opinion that the testimony was competent and should have been admitted. The credit of a witness, upon whose testimony in part the issue is to be determined, is not merely collateral, and cannot be immaterial. The weight of his testimony with the jury may depend entirely upon their supposition that he is under no influence to prevaricate. If he is prejudiced for or against one of the parties to the suit, or has a strong purpose or feeling of interest in relation to the matter in controversy, it is a circumstance which may materially affect his testimony ; and his state of mind and feeling ought to be known to the jury. His prejudices can be known only by his expressions of them; and therefore such declarations are the legitimate evidence of their existence. They may be proved in any mode as a direct impeachment, under the rule as held in this commonwealth ; or, if denied by the witness himself, may be proved by other testimony as a contradiction in a material point ; which is one mode of impeaching the credit of a witness. 1 Greenl. Ev. § 450. 2 Taylor Ev. §§ 1296–1298. *Perkins* v. *Adams*, 5 Met. 44. *Harrington* v. *Lincoln*, 2 Gray, 133. *Collins* v. *Stephenson*, 8 Gray, 438. *O'Neill* v. *Lowell*, 6 Allen, 110. *Tyler* v. *Pomeroy*, 8 Allen, 480. *Atwood* v. *Welton*, 7 Conn. 66–70. *Folsom* v. *Brown*, 5 Fost. (N. H.) 114.

The declarations of the witness Parks, that were sought to be proved, related to the bond which was the subject of his testimony, and to one of the defendants in the suit. If he made declarations, such as are indicated by the inquiry, his testimony would not be entitled to the fullest confidence. The court see no ground to question any of the other rulings and instructions to the jury at the trial; but as the testimony offered to contradict and impeach Parks was improperly excluded, the exceptions must be sustained as to that point and a

*New trial granted.*

This case was re-argued in November 1867 upon the admissibility of the evidence to contradict Parks.

*H. W. Paine & R. D. Smith*, for the plaintiff. The testimony objected to was offered for the alleged purpose of contradicting

and impeaching Parks. Both of the questions which were put were too indefinite to furnish any contradiction of him. The only safe course, when a witness is to be contradicted by showing his declaration, is to ask him the question, " Whether he has said so and so," and then to ask of the contradicting witness the leading question, " Has the witness said so and so *(ipsissimis verbis)* to you ?" This is the only fair course to the witness. In this case, Parks has not denied that he meant to get back the money on this bond from old Fawcett; but a qualification was added to his denial. As to the substance, the testimony offered to contradict Parks was upon a matter quite immaterial and collateral. See *Commonwealth* v. *Buzzell,* 16 Pick. 153. *Starks* v. *Sikes,* 8 Gray, 609. 1 Greenl. Ev. § 449, *notes.* The testimony was not admissible for the purpose of impeaching Parks. *Starks* v. *Sikes,* 8 Gray, 609. *Stuart* v. *Lake,* 33 Maine, 87. The object was to show an *animus,* bias or interest. But the witness had been subjected to a sort of examination upon his *voir dire ;* and if the interest of a witness is attempted to be shown upon his *voir dire,* and fails, it cannot be proved *aliunde.* *Butler* v. *Butler,* 3 Day, 214. *Atwood* v. *Welton,* 7 Conn. 66. *Chatfield* v. *Lathrop,* 6 Pick. 418. 1 Greenl. Ev. § 423, *n.* 5.

*J. S. Abbott,* for the defendants.

WELLS, J. Having again heard the parties, upon the suggestion of the plaintiff's counsel that the question above determined had not been fully presented at the argument, in consequence of their mistake in supposing the point to be waived, we see no reason to recall or in any respect to modify the opinion already given.

The argument now addressed to us, as we understand its force, seems to be this : That the defendants in their exception are to be confined to the purposes for which the testimony was offered, as stated by them at the trial, namely, to impeach and contradict Parks ; that in order to contradict, the inquiry was not in proper form ; and in order to impeach him, the substance of the proposed proof was inapplicable; that is, that proof of personal bias, or of a state of feeling or purpose adverse to the defendants, was not of the nature of evidence to impeach a

witness. The plaintiff contends that when it is proposed to contradict a witness by proving declarations made by him out of court, the inquiry should embody the exact statement which the witness to be contradicted has denied that he made; and that the party should be restricted to that limit.

If the proposed proof were competent only for the purpose of contradiction, and the contradiction could arise only from a previous denial by the witness that he had made such a declaration, it might be well so to limit the inquiry. But otherwise the position can have no foundation, except upon the rule requiring that, in order to contradict a witness in this mode, his attention must first be called to the precise matter that is to be proved against him; a rule which, as before suggested, does not prevail in this commonwealth. Under our practice a declaration, made out of court, contrary to or inconsistent with the testimony of a witness, in any material matter, may be proved by other testimony, either with or without a previous inquiry to the witness thus contradicted. *Tucker* v. *Welsh*, 17 Mass. 160. *Commonwealth* v. *Hawkins*, 3 Gray, 463. *Harrington* v. *Lincoln*, 2 Gray, 133. It must follow therefore that the inquiry to the contradicting witness need not be restricted to any such prescribed form, but may be in any form proper to elicit the facts or statement sought to be proved. *Gould* v. *The Norfolk Lead Co.* 9 Cush. 338–347. This is especially true when the contradicting testimony is also admissible as affirmative proof, either to impeach the witness or for any other legitimate purpose.

In the present case, the testimony sought would have been admissible as such affirmative proof; and we are satisfied that it was properly offered as evidence tending to impeach Parks. Impeachment is not limited to attacks upon the general character of the witness. It embraces all means, the purpose and tendency of which are to impair the credit of a witness. Under the English rule requiring that the witness should himself be interrogated as to his interest, bias or hostile feeling, before other witnesses could be called to prove it by his declarations, such proof always ·nvolved a question of contradiction, and was generally treated in this secondary aspect alone. But the whole

investigation relating thereto was regarded as belonging to the province of impeachment. Stark. Ev. (4th Lond. ed.) 237. Its character is the same although the contradiction be omitted. It is an investigation material to, but not of the main issue in the case.

We think the questions that were disallowed were sufficiently directed to a legitimate point of inquiry, and indicated testimony which would have been competent for either purpose ; to contradict or to impeach Parks. The plaintiff calls our attention particularly to the case of *Starks* v. *Sikes*, 8 Gray, 609. But in that case the hostile purpose which was shown related to another transaction than that which was the subject of the suit. The evidence did not show any personal hostility, nor adverse purpose as to the matter then on trial. No grounds are stated for the decision upon this point in that case, and the decision itself is not inconsistent with the rules of evidence as herein maintained.                                        *New trial granted.*