John Smithwick, et al., caveators, plaintiffs in error, vs. Clement A. Evans, ex'or, defendant in error.

[1.] A woman cannot be impeached as a witness by proof that she is a common prostitute.

[2.] An attorney employed in a cause, may, when it is relevant, be examined as to the amount of his fee, and the terms on which it is to be paid.

[3.] A will may be impeached by extrinsic evidence, as violative of the Acts of 1801 and 1818, prohibiting the emancipation of slaves in this State.

Caveat to will, from Stewart Superior Court. Tried before Judge KIDDOO, at April Term, 1857.

1st. The caveators having introduced and examined Frances Andrews as a witness, the propounders, by way of impeaching and discrediting her testimony, proposed to prove by B. K. Harrison, Esq., that she was a notorious prostitute. Counsel for caveators objected. The Court overruled the objection and admitted the evidence, and counsel for caveators excepted.

2d. Counsel for caveators proposed to ask E. H. Beall, Esq., one of the witnesses to the will, and the attorney who drafted it, and who was of counsel for propounders in this cause, the amount of his fee, and upon what terms it was to be paid. To this question counsel for propounders objected; the Court sustained the objection, and counsel for caveators excepted.

3d. Counsel for caveators requested the Court to charge the jury, that the will, so far as it provided for the emancipation of certain slaves, was repugnant to the Acts of 1801 and and 1818, and void. The Court refused so to charge, but, on the contrary, charged that the will was not repugnant to said Acts, and not void. To this charge and refusal to charge counsel for caveators excepted.

BARRY; and B. S. WORRILL, for plaintiffs in error.

TUCKER & BEALL; and HOLT, contra.

By the Court.—McDONALD, J. delivering the opinion.

[1.] The caveators introduced Frances Andrews as a witness, whose testimony was given. To impeach her credit, the propounders introduced a witness who testified that she was, by reputation, a notorious prostitute. The testimony of the latter witness was objected to, but the objection was over-

ruled.   This  decision of the Court  is excepted  to, and that
exception constitutes a  ground of error.

This Court has already decided that the mode of impeach-
ing  a witness for  defect of character  is  to prove  by witnesses
who know his. or her *general* character,  and that from such
knowledge they would not believe him  or her on oath.  *Stokes
vs.  The State,* 18  *Ga. Rep.* 37.   It does not follow, necessari-
ly, that because a  woman is a  prostitute, she is incapable  of
telling the truth.   It is a  great blemish in character, but there
is no  reason wherefore she should  be  placed in a  worse con-
dition than other persons of depraved character.   It is possi-
ble, that while she is  unquestionably  immoral  in a  degree
to exclude her from  respectable society, she may have estab-
lished a good  character for truthfulness.   If so, and upright
witnesses will not  impeach  her  character  in that respect,
there is no reason why her testimony should not be received.

[2.]  The exception to the decision  of the Court  sustaining
an objection  to the admissibility of the  testimony of E. H.
Beall, Esq., constitutes the next ground  of error.   Mr. Beall
is a subscribing witness to the will, and counsel for the  pro-
pounder.   He had been  examined by the propounder of the
will.   The question was as to the amount of his fee, and the
terms on  which it was to  be  paid.   It  was  not a matter  of
confidential communication from  his  client that he was  in-
terrogated to ;  nor  was it as to a  matter  or thing which  he
acquired from his client, or during the existence  or by reason
of the relationship of client  and attorney.   It was  in regard
to a matter which  must have been  necessarily  agreed upon
before  the  relation of  client  and  attorney  could  exist.   It
was, *prima facie,* relevant to the matter in issue.   He ought
to have been required to answer the question.

[3.]  After the evidence was closed, the counsel for the ca-
veators requested the Court to charge the jury, that  the  will,
so  far as it provided for the  emancipation of  certain  slaves
therein  mentioned, was repugnant to  the Acts  of 1801 and
1818, prescribing the  mode of manumitting  slaves  in this

State. The Court refused to give said request in charge to the jury, but on the contrary, charged the jury in substance that the said will was not repugnant to said Acts, and was not void. This charge and refusal to charge are excepted to.

The testator directs and desires his negro woman Jane and her four children to be placed under the charge of the American Colonization Society, to be conveyed by the society, and under its charge, to Liberia, in Africa, and there to be set free according to the laws of that country. The testator further directs, that if his wishes as above expressed, cannot be carried out either by his executors or the society, that his executors shall carry the said negroes to some State in the United States, where, according to the laws therein, they can be set free.

The expenses of carrying the said negroes to Liberia or to a free State, were to be first paid out of the proceeds of the sale of his property, as directed in the second item of his will

If the Colonization Society refuse, or do not provide the means or expense of their transportation to Liberia, his executors are to pay them.

He does not wish Jane and her children to be hired out, provided there is a sufficiency of money arising from the sale of Henry and his other property, to pay their expenses to Liberia or a free State.

He desires his executors to have them carried to Liberia or a free State, as soon as it can be done after his death.

In the mean time, between his death and their departure, his executors are to have the said negroes in trust for the purposes aforesaid.

By the second item in the will, he directs a negro man Henry, and all other property he might leave at the time of his death, to be converted into money, and his funeral expenses and debts to be paid.

If the sale of the other property should not raise a sum sufficient to defray all the expenses that might accrue in the settlement of his estate, he authorizes his executors to hire

out his negroes until there may be a sufficient fund to defray all expenses of carrying out the provisions and intentions of the will.

This Court has decided that the Acts of 1801 and 1818 do not prohibit extra-territorial manumission, provided it is not the testator's intention that the negroes are, during an intervening period between the death of the testator and their removal from the State, to be free, or enjoy their freedom within the State. Whether this will violates the said Acts, according to this interpretation of them, depends in some measure, we think, on evidence outside of the will.

The will is skillfully drawn to avoid the operation of the Acts of 1801 and 1818 as construed by this Court. But, nevertheless, if it be, in fact, violative of those Acts, it cannot stand.

If it be not apparent on the face of the will, that *it is not* in violation of the Acts of 1801 and 1818, the charge, that it is not repugnant to those Acts, is erroneous.

It is not certain, from the terms of the will, that the testator did not intend the negroes, Jane and her children, to remain in Georgia, free, an indefinite length time.

By the second item in his will, he directs that Henry and *all other* property which he had at the time of his death be sold. If Jane and her children were property, and left by him as property at the time of his death, they were, by the directions of the will, to be sold. If they were not left as property, they could not be sold. They must have passed to the executor, on the death of the testator, either as property, or in trust, as free persons of color. The bequest to them of extra-territorial freedom was inconsistent with their sale under the general direction in his will for the sale of all the testator's property, and being a later clause in the will, it must prevail, unless it be illegal and void according to the construction placed by this Court on the statutes of 1801 and 1818. In determining this question, the will itself must be

looked to, as well as facts extrinsic to the will. If it appear by evidence that the provisions of the will cannot be executed, without the enjoyment of freedom by the slaves emancipated, within this State, contrary to law, the bequest of freedom is void. It must appear that this state of things is not attributable to the misconduct of the executor, for the negroes must not be subjected to the loss of the freedom intended for them by the testator, by his mismanagement. But if it be impossible to execute the provisions of the will, except by violating the law, it cannot be done, and every thing must yield to the public policy on which the law is founded.

I have perhaps said enough on this subject, as the case goes back for a new trial on other grounds.

Judgment reversed.