MALLARD, STACY & CO. *v.* MOODY & BREWSTER.

1. Where an owner and a contractor entered into a contract whereby the latter agreed to build a hotel for the former, and the articles of agreement referred to certain drawings and specifications as a part of the contract; and where the specifications contained a clause requiring the contractor to put in the hotel a certain heating-apparatus, and afterward the parties differed as to whether it was the duty of the contractor to put in such apparatus; and where the contract contained a clause as follows: "Should any difference of opinion arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by the architect, and his decision shall be final and conclusive," this clause did not authorize the architect to decide that the contractor was not bound by the contract to put in the heating-apparatus, nor did the architect's certificate thereafter, that the work had been completed according to contract, bind the parties as to this matter, the contractor not having put in the heating-apparatus.

2. Where a defendant insists upon certain payments made by him upon the contract sued upon, which payments are evidenced by receipts given by the plaintiff, such receipts are prima facie evidence of pay-

ment, and whether the plaintiff has successfully carried the burden
of proving the contrary is a question for the jury. The court, there-
fore, erred in not submitting this question to the jury.

3. In the trial of a suit upon a contract, where the material issue in-
volved is whether the contract has been completed by the plaintiff,
it is error to admit, over the objection of defendant's counsel, the
testimony of a witness introduced by the plaintiff, to the effect that
the architect had said to him (the witness) that the contract had
been completed, the defendant not being present when this conversa-
tion occurred.

Argued May 19, — Decided July 21, 1898.

Foreclosure of lien, etc.   Before Judge Reid.   City court of
Atlanta.   January term, 1898.

*Anderson, Felder & Davis,* for plaintiffs in error.
*Rosser & Carter* and *Arnold & Arnold,* contra.

SIMMONS, C. J.   Mallard, Stacy & Co., the owners of a lot
of land in the city of Atlanta, entered into a contract with the
George H. Holliday Lumber Company, whereby the latter
agreed, for a certain consideration, to build for the former a
hotel to be known as the "Alhambra."   The articles of agree-
ment mentioned certain drawings and specifications as a part of
the contract, and also contained the following stipulation:
"Should any difference of opinion arise respecting the true con-
struction or meaning of the drawings or specifications, the same
shall be decided by the architect, and his decision shall be final
and conclusive."   The hotel was to be completed by September
18, 1895.   The lumber company claimed that they had com-
pleted the building according to contract, and that the owners
were indebted to them in a certain amount.   Shortly after the
completion of their work, the lumber company filed and re-
corded its lien for this amount.   The lien was transferred by
the contractor to Moody & Brewster, who brought suit upon it
against Mallard, Stacy & Co.   The defendants filed certain
pleas, among them one to the effect that the contractor had not
completed the hotel according to the contract, having failed to
put in a certain heating-apparatus required by the specifica-
tions, to wit: *"Furnace.*—The same to be furnished and set up
at the designated place, a number 14 Mott Furnace with the
usual fixtures, furnished with cold-air ducts, etc., for general
26

heating of all the halls, cafe, offices, parlor, and other parts, as per the plans prepared for heating.   The furnace to be set up in the best possible manner and so arranged as to give the best possible results, and on the floors the requisite warm-air registers as marked, the registers to be not less than 12 by 14, and to have an independent line for each register."   Moody & Brewster replied that no specifications were ever signed by the contracting parties, and that, if such specifications had been signed, under the stipulation above cited, the architect had decided that the contractor was not bound by the contract to put in any sort of heating-apparatus.   The trial judge in his charge to the jury instructed them to ascertain whether the specifications had been signed by the parties ; and that if the specifications had been signed by the parties and had become a part of the contract, and a difference had arisen as to the true construction or meaning of the clause in regard to heating, and the architect, under the authority given him by the contract, decided that it did not include an obligation on the part of the lumber company to put in heating-apparatus, there would be no obligation on the part of the contractor to put in this heating-apparatus under this clause, and the defendants could not set up a failure to do so as any reason why they could decline to pay any part of the contract price.   We think the learned judge of the court below misconstrued the meaning of the clause of the contract in relation to the power and authority of the architect.   The architect had power under this clause simply to pass upon the meaning and construction of the drawings and specifications.   He had the power to decide whether the work done was of the character or quality mentioned in the specifications.   The specifications called for one Mott furnace with usual fixtures, etc.   The architect had power to decide, had the contractor put in a furnace, whether it was the furnace required, and whether the usual fixtures, cold-air ducts, etc., were furnished according to the specifications, whether the apparatus heated the halls, cafe, offices, etc., and whether it was in accordance with " other parts, as per the plans prepared for heating."   He had also power to decide as to the materials used, and as to whether the furnace and fixtures were put up in a workmanlike manner.

If the specification as to heating-apparatus was agreed upon by the parties, it became a part of the contract, and there is nothing in the clause relative to the decision of the architect which gave him power to decide that a part of the contract between the parties is not binding. To give him such power would be to allow him to make a new contract for the parties. He could construe the contract and decide what it meant, or determine the nature and character of the work or materials required, but he could not eliminate or abrogate any of its terms. If the parties did agree upon these specifications and the clause requiring the heating-apparatus was a part of them, the decision of the architect, to the effect that the contractor was not bound to put in heating-apparatus, entirely eliminated this clause and to that extent varied the contract made by the parties.

The certificate of the architect, upon the completion of the work, that the contract had been fully complied with, can not aid the plaintiffs as to their failure to put in the heating-apparatus. If a contractor agree to put in a heating-apparatus and fail entirely to comply with this agreement, or if he agree to build a house of stone and in fact build it of wood, the certificate of the architect that the work had been completed according to contract would not bind the owner. In the case of Bond v. Mayor etc. of Newark, 19 N. J. Eq. 376, it was held: "The certificate of a superintendent, surveyor, or architect, who by the contract for any work is to superintend its performance, and whose approval is required before any payment is due, can not dispense with the performance of any substantial part of the contract, but may be binding as to the fact whether the work certified to was done in a workmanlike manner, or of proper materials of the kind required. But such certificate would not make building a brick house a compliance with a contract to build one of marble. Nor would the fact that a house built of brick is substantially, and for service, as good or better than one of marble, make such a building a performance of the contract, upon being certified to be so." In the case of Woodruff v. Rochester & P. R. Co., 108 N. Y. 39, Earl, J., in speaking on this subject, said, in relation to the power of

engineers in accepting work done on a railroad: "But they had no power to alter or vary the terms of the contract or to create obligations binding upon the defendant not embraced in the contract," citing many cases.  Wait, in his work on Engineering and Architectural Jurisprudence, in speaking of the powers of architects and engineers, says (§ 371) : "The engineer is an agent with special powers, simply to do the engineering and to superintend and direct the work.  Unless specially conferred, he has no power to contract or to vary the terms of the parties' agreement.  He can create no new obligations not embraced by the contract."  And in section 402 he says: "It is usual to constitute the engineer a referee as to the meaning of the plans and specifications which are his own invention and handiwork, a certain construction of which is necessary to the proper erection and completion of the works.  His powers can not be enlarged by implication, but they will be confined strictly within the terms of the contract."  In 2 Am. & Eng. Enc. L. (2d ed.) p. 820, it is said:  "An architect superintending the erection of a building has no authority generally to make alterations in the plans and specifications and bind his employer for extra work, or to make any changes in the original contract."  "He can not bind the employer by accepting a class of work inferior to or different from that called for by the contract."  In Glacius *v.* Black, 50 N. Y. 145, s. c. 10 Am. Rep. 449, it was held:  "The acceptance by the architect did not relieve the contractors from their agreement to perform the work according to the plans and specifications; nor did his acceptance of a different class of work, or inferior materials, from those contracted for, bind the owner to pay for them."  In the case of Adlard *v.* Muldoon, 45 Ill. 193, it was held, in an action by the contractor for the balance claimed to be due upon the contract, that the architect could not, unless specially authorized, change the terms of the contract, and that there could be no recovery unless the specifications were complied with.  Numerous other cases could be recited, announcing the same principle, but these are in our opinion sufficient to establish the doctrine that an architect has no power to change, alter or modify the contract between the parties,

and that his certificate, after he has so changed or modified the contract, that the work has been completed according to the contract, will not bind the parties. According to the charge of the court, if the jury had found that the specifications above alluded to had been signed and had become a part of the contract, the decision of the architect, that the contract did not require that heating-apparatus should be put in the hotel, would have been final and conclusive and the jury obliged to find for the plaintiffs; indeed, the court so instructed them. We do not, of course, decide whether or not the specifications were a part of the contract. That is a question for the jury. We only announce the above principles in dealing with the charge of the court below.

2. In the progress of the trial, the defendants put in evidence two receipts, for $500 each, given by the lumber company and bearing date as of the same day. It was claimed by the defendants that they had not been given credit for the amount of one of these receipts. The plaintiffs claimed that both receipts were given for one and the same payment of $500. Receipts for money are prima facie evidence that the person signing the receipt has received the amount specified. This can be rebutted by testimony. The plaintiffs in this case introduced evidence to explain the receipts and to show that the two receipts were given for one and the same payment. This made an issue of fact which should properly have been determined by the jury. The court failed to submit it to the jury, but assumed in his charge that the plaintiffs' evidence sufficiently explained the giving of the two receipts. This question should have been submitted to the jury.

3. It appears from the record, that the final certificate of the architect as to the completion of the building was lost. The plaintiffs undertook to prove its contents. A witness was allowed, over the objection of the defendants, to testify as to conversations between him and the architect. He was allowed to testify as to sayings or declarations of the architect, which did not occur in the presence of the defendants. This in our opinion was error. The witness could have testified to the fact that he saw the architect sign the certificate and to the contents

of such certificate after it had been signed, but declarations of the architect leading up to the signing of the certificate were inadmissible.

*Judgment reversed.* *All the Justices concurring.*