McDERMOTT *v.* LANKENAU, executor.

No. 7314.   MARCH 18, 1930.   REHEARING DENIED JUNE 13, 1930.

*Lawrence & Abrahams* and *H. Mercer Jordan,* for plaintiff.
*McIntire, Walsh & Bernstein,* for defendant.

GILBERT, J. 1. Movant complains that the court erred in charging the jury as follows: "You are not charged with the duty of determining whether or not she made the will freely or voluntarily, or that any influence was brought to bear on her." The criticism of the charge is that under the pleadings the court should have submitted to the jury the question whether or not the will was freely and voluntarily made, or whether the will was the result of influence brought to bear on the testatrix, due to her infirmities of age and illness; also that it ignored the testimony tending to show that the will was made in response to urgent suggestion from other persons. *Held:* The charge was not error. The issue was properly restricted to whether or not there was a contract between the parties, as alleged in the petition, and a breach thereof.

2. Movant complains that the court erred in stating the contentions of the petitioner, in that the court referred to the contract alleged to have existed between the parties as having been entered into on or about the year 1925, and that the pleadings and the evidence required a charge that in the year 1927 the contract was renewed and confirmed, and that the statement of plaintiff's contentions was otherwise not full and complete. *Held:* This assign-

ment of error does not require a reversal. If petitioner desired a more detailed statement, a written request should have been duly presented.

3. Movant complains that the court erred in charging as follows: "The contract and the terms thereof must be made out so clearly, strongly, and satisfactorily as to leave no reasonable doubt." The criticism of the charge is as follows: (a) That the principle stated is not applicable in a civil case; (b) that it is inapplicable in a suit for specific performance not involving a contract to devise land; (c) that in a suit merely involving specific performance of an oral contract not involving land, the rule stated is inapplicable; that the rule in such cases is that of a preponderance of the evidence; (d) because the instructions are violative of art. 1, section 4, par. 1, of the constitution of Georgia (Civil Code of 1910, § 6391), which provides that laws of a general nature shall have uniform operation throughout the State, and is also violative of the provisions of "subsection 5 of article 8 of the constitution of the United States, which provides that no person shall be deprived of property without due process of law," because the law of reasonable doubt is applicable only to criminal cases, whereas in civil cases the rule of preponderance of evidence is applicable; that the Code of Georgia, §§ 5730-32, having defined the rule of law applicable in all civil cases, can not be limited by an instruction, in the case of specific performance or breach of contract, by the rule applicable in criminal cases only, as such application violates the constitution as to the uniform operation of the law. *Held:*

(*a, b*) The principle stated in this excerpt, and also complained of in substance in two other grounds of the motion, is in accord with previous decisions of this court, and is held not to be erroneous. *Scott* v. *Williams,* 167 *Ga.* 386 (145 S. E. 651), and cit.; *Suber* v. *Black,* 168 *Ga.* 439 (148 S. E. 81).

(*c*) The contract purports to include within its terms the devise of land, and the suit is for specific performance.

(*d*) Such instruction is not violative of the State or the Federal constitution, for any reason assigned. The application of the rule is proper in all cases of like kind, wherever occurring within the State of Georgia. There is no denial of due process, because every suitor is afforded an opportunity to be heard before there is an adjudication according to the established law of the land.

4. On cross-examination, the following evidence was admitted: "Q. While Mrs. Grimm was there [at Mrs. Rubin's], did you or Mrs. McDermott not try to borrow money from Mrs. Grimm? A. Positively, I never have asked Mrs. Grimm for a nickel in my life. Q. For the purpose of enabling Mr. McDermott to go into the gas-filling station business? A. No, sir, my father was to furnish that money." The complaint is that after the introduction of the testimony plaintiff's counsel sought to interrogate the witness as to the full details relative to the conversation about the "gasoline filling-station business." The court, on objection, refused to permit the plaintiff to prove the details of such transaction and conversation. *Held:* No error is shown.

5. Movant complains that the court, on objection by the defendant, refused to allow the clerk of the court of ordinary to testify: "I have custody of the marriage licenses and have the marriage license record. I hold in my hand the record of the marriage of John H. Grimm to Mrs. Annie T. Foley, who later married Grimm, and is the deceased testator." *Held:* The court did not err. The materiality of the evidence is not shown, and therefore no error is shown.

6. Movant complains that the court allowed the introduction in evidence of a letter dated Danville, Va., 3/17/'27, signed John F. McDermott, together with the envelope postmarked March 18, addressed Mr. T. R. Burkeman, Detective's Office, Charleston Police Dept. Charleston, S. C., the contents of the letter being as follows: "Dear Burkeman. Thanks to your assistance and help, I have been able to recover my 7 Cluster ring Dinner ring, the cuff-links, also an electric percolator and a scarf that was sent to my wife from a cousin in Germany. The old lady had them in her trunk in Denmark. She tried to stall, but when I told her I had been to Chas.—& a detective went to the jewelry shop with me, she admitted it. Please present my thanks to your chief & best wishes to yourself. Yours truly, John F. McDermott. Excuse pencil. If you see Mr. Marks, the old gentleman, tell him I got them. J. F. McD." The objection to this evidence was that it was irrelevant and immaterial and not the basis of impeachment of Mrs. King or Mr. and Mrs. McDermott; and it was also contended that no sufficient proof had been submitted of the handwriting to prove that it had been written by J. F. McDermott, a witness in the case.

*Held:* The admission of this evidence was erroneous. A witness can not be impeached by proof of a specific instance, as in this case, by an oral charge of larceny, where no indictment and record of the conviction is offered. *Slappey* v. *Sumner,* 136 *Ga.* 692 (71 S. E. 1075) ; *McCray* v. *State,* 134 *Ga.* 416, 425 (68 S. E. 62, 20 Ann. Cas. 101) ; *Green* v. *State,* 125 *Ga.* 742 (6) (54 S. E. 724). See also *Killian* v. *Ga. R. Co.,* 97 *Ga.* 727 (25 S. E. 384).

7. Movant complains that the following evidence was admitted over objection: "I recall shortly after Mr. and Mrs. McDermott returned from their trip north, about August, 1927, that she told me about recovering some of their jewelry that had been stolen. Mrs. McDermott told me that she had this lady living with her, and spoke of her as 'Ma,' and she said she always thought so much of her and trusted her, and she said after this lady left she missed her jewelry, and that when she and Mr. McDermott left here they stopped at this lady's house in South Carolina, and that in going through a bureau drawer, or some drawer, maybe a dresser drawer, that she came across some of her jewelry, and that Mr. McDermott left her there while he went to Charleston, I think, to get a detective to go back and try to recover it, and that they got her jewelry back. This is what she told me." The objection was upon the ground that it was irrelevant and immaterial, and not the basis of impeachment of the witness, Mrs. King, or Mr. and Mrs. McDermott. *Held:* The admission of this evidence was erroneous. Considered in connection with the ruling in the preceding note, the error was not cured by the admission, without objection, of other evidence substantially to the same effect by *other* witnesses.

8. Movant complains that the court admitted the following evidence: "Mr. John F. McDermott told me that he went to Denmark, S. C., and discovered the scarf-pin made out of diamonds that had been stolen from his cuff-links. He did not only tell that to me, but to my father also, the night he came from Denmark, when he came back to Savannah. He said he had one of the cuff-links that had been made into a scarf-pin with him. He said he was going back to Charleston from here. He later told us about the result of his trip to Charleston. He kept us up until one o'clock one night talking about it, and he said he got back the cuff-links, and he put them in the safe with my father for safekeeping, and he said he recovered them from Mrs. King." The ground of objec-

tion was that the evidence was irrelevant and immaterial, and "not the basis of impeachment of the witness, Mrs. King, or Mr. or Mrs. McDermott." The admission of this testimony was error, for the same reason stated in the preceding headnote.

9. Error is assigned because the court, over objection of counsel for plaintiff, refused to permit the plaintiff to prove, by H. Mercer Jordan, the testimony given in a former trial by T. F. Walsh, a witness for the defendant, as follows: "Mr. T. F. Walsh, a witness on the former trial of the case, and of counsel for the defendant, testified that the will under consideration was written by him in his handwriting, in long-hand, at the St. Joseph's Hospital, he having been sent for by Mr. Cornelius McCarthy; that it is usual and customary, frequently, to get memoranda and thereafter draft a will in the office, but that on this occasion he had called to see Mrs. Grimm at the hospital. He left her a pencil and memorandum sheet of paper, and that she then made a pencil draft of what she wanted put in the will. That he called subsequently, and that Mrs. Grimm had a pencil memorandum made of what she intended her will to be. That she wanted to leave some of her money to the St. Marys Orphan Home. She had everything down except the $5000.00 left to the Bishop, and she said she thought she would leave that to the Orphan's Home, and asked my opinion about that. I said: 'Well, I am vice-president of St. Mary's Home, and I happen to know that under Dr. Herron's will it only recently received $100,000, and that they don't need money so badly, but I do know that the Bishop is short of money for educational purposes, and if you want me to suggest I suggest you leave that $5000 to him.'" *Held:* Under the pleadings and the evidence this testimony was not admissible, because the only question to be determined was whether there was such a contract as alleged by the petitioner, and a breach thereof.

10. Other grounds of the motion for a new trial, not specifically dealt with, are either controlled by the rulings stated in the preceding headnotes, or are of such character as do not require special mention and do not show error.

11. No ruling is made upon the sufficiency of the evidence, because the case is remanded for another hearing. The court erred in refusing to grant a new trial.

12. The request to review and overrule the cases of *Printup* v.

*Mitchell,* 17 *Ga.* 558 (63 Am. D. 258); *Redman* v. *Mayes,* 129 *Ga.* 435 (59 S. E. 212), *Gordon* v. *Spellman,* 145 *Ga.* 682 (89 S. E. 749, Ann. Cas. 1918A, 852), *Gordon* v. *Spellman,* 148 *Ga.* 394 (96 S. E. 1006), *Lloyd* v. *Redford,* 148 *Ga.* 575 (97 S. E. 521), *Scott* v. *Williams,* 167 *Ga.* 386 (supra), *Chamblee* v. *Wayman,* 167 *Ga.* 821 (146 S. E. 851), and *Suber* v. *Black,* 168 *Ga.* 439 (supra), is denied.

*Judgment reversed. All the Justices concur, except Atkinson, J., disqualified, and*

HINES, J., dissenting. 1. I can not agree to the ruling made in the 6th division of the opinion in this case. This ruling is based upon the overruling of the objection of plaintiff to the admission of the letter which is set out in this headnote. This ruling is based upon the ground that a witness can not be impeached by a specific oral charge of larceny, where no indictment and record of conviction are offered. This objection was not urged to the admission of this letter. Its admission was objected to upon the ground that it was irrelevant and immaterial, and not the basis of impeachment of the witnesses, Mrs. King, Mr. or Mrs. McDermott, and that these witnesses could not be impeached by contradictory statements touching a matter not relevant to the issue involved. This letter was clearly admissible for the purpose for which it was introduced. The majority of the court, I think, have overlooked this purpose. It was not introduced for the purpose of proving by parol that Mrs. King, the chief witness on whom the plaintiff relies to make out her case, was guilty of larceny. It was introduced for the purpose of impeaching the husband of the plaintiff, who was sworn as a witness in her behalf. Counsel for the plaintiff, as we have seen above, did not object to its admission upon the ground upon which the majority of the court put their decision. They objected to its admission upon the ground that the facts relating to the larceny of this jewelry were immaterial and irrelevant to the issue on trial, and that for this reason these facts would not furnish the basis of impeaching Mrs. King, the plaintiff, or her husband, and that these witnesses could not be impeached by contradictory statements touching a matter not relevant to the issue involved. .Was it competent for the defendant to prove that the husband of the plaintiff, a short time before the institution of this suit, had charged Mrs. King, the witness for the plaintiff, with the larceny of certain

property belonging to him and his wife, that when he first approached this witness about this matter she denied having taken this property, but, when told by the husband that he had been to Charleston and gone with a detective to a jewelry shop and received this property, she admitted the larceny of this property? The defendant undertook to prove these facts by the husband of the plaintiff, who denied the existence of such facts. Defendant then introduced the above letter for the purpose of impeaching and discrediting his testimony. Counsel for the plaintiff insist that this witness could not be impeached by these contradictory statements, because they were not made by him as to matters relevant to his testimony and to the case, as is required by section 5881 of the Civil Code, which provides that "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case." He relies upon the decision in *Hudgins* v. *Bloodworth,* 109 *Ga.* 197 (34 S. E. 364), in which this court, in construing this section of the code, held that a witness can not be impeached by proving contradictory statements made by him as to matters not relevant to his testimony and to the case, and upon the decision in *Brackett* v. *Americus Grocery Co.,* 127 *Ga.* 672 (56 S. E. 762), in which this court made the same ruling and held that the rejection of a letter was proper where it did not relate to a matter material to the issue.

The question then arises whether the contradictory statements contained in this letter were material or relevant to the testimony of the husband and to the issue on trial. Two classes of fact are not collateral, but relevant to the issue on trial. One embraces all facts which are relevant to some issue in the case under the pleadings. The other class embraces all facts admissible to discredit the witness as to bias, corruption, motive for testifying falsely, or the like. 2 Wigmore on Evidence, 465, § 1021. The credit to be given to a witness is always material and relevant to the issue on trial; and as affecting such credibility it is always competent to prove any fact or facts tending to show any motive for the witness to testify untruly on such issue. When a witness for the plaintiff, upon whose testimony she principally relied to set up her contract which if proved and enforced would give her a large estate, had been charged by the husband and the wife with having been guilty of larceny of property belonging to the husband

and the wife, and where such witness upon being charged with the larceny first denied it, but, when told by the husband that he had gone with a detective to a jewelry establishment and got it, then admitted the larceny of the property, and shortly thereafter such person appeared as a witness for the plaintiff in the present suit, and testified to facts tending to establish the plaintiff's cause of action, the above facts could be proved by the defendant in order to discredit the testimony of such witness. The jury might say that the fact that the witness had been charged by the plaintiff and her husband with larceny of jewelry and other property belonging to the plaintiff and her husband, and might be proceeded against for the larceny thereof, tended to show that the witness was testifying to avoid prosecution for or exposure of the larceny, or with the motive to curry favor with the plaintiff and her husband, and thus escape action against her for larceny. This principle was recognized in *McCray* v. *State,* 134 *Ga.* 416 (supra), where it was ruled that "It was not error, in view of the evidence in this case, to admit in evidence, to be considered solely on the question as to the credibility of a witness testifying in behalf of the accused on trial, an indictment against him and such witness, charging them jointly with the offense of assault with intent to murder, alleged to have been committed upon a named person, who, the evidence in the case on trial showed, accompanied the deceased at the time he was killed, and was assaulted as he was leaving the scene of the homicide." In that case this court held that the testimony was admissible, not to show the guilt of the witness, but to establish that he had a motive for testifying for the accused in the case on trial. In *Cochran* v. *State,* 113 *Ga.* 726 (39 S. E. 332), this court held that "Any fact shown by the evidence, which according to human experience and observation would naturally tend to cause the witness to lean towards one side or the other, may be considered by the jury in passing upon the credibility of a witness's testimony and the weight to be given to his evidence." So the pendency of any indictment against the witness, which indicates indirectly similar possibility of his currying favor by testifying in favor of a party to the case, is admissible for the purpose of discrediting him. 2 Wigmore on Evidence, 350, § 967. The credit of a witness upon whose testimony in part the issue is to be determined is not merely collateral, and can not be immaterial. Day *v.* Stickney, 96 Mass.

255, 258. So when the husband of the plaintiff denied making the statements contained in this letter, and these statements being material on the question of the credit to be given to the witness, the admission of the letter containing these statements was proper to contradict the witness.

2. I dissent from the rulings in the 7th and 8th divisions of the opinion. The 7th headnote deals with the admission of certain evidence over objection of the plaintiff. The court permitted a witness to testify that the plaintiff told this witness that she missed her jewelry after Mrs. King left her home, that she and her husband stopped at Mrs. King's home in South Carolina, that in going through a bureau drawer she came across some of her jewelry, that her husband left her there while he went to Charleston to get a detective to try to recover it, and that she got her jewelry back. The objection to the admission of this evidence was put upon the ground that it was irrelevant and immaterial and was not a basis of impeachment of Mrs. King, or Mr. and Mrs. McDermott. The 8th headnote deals with the admission of the testimony of a witness to the effect that the husband of the plaintiff had told her that he went to the home of Mrs. King, in Denmark, S. C., that he discovered his diamond scarf-pin which had been stolen from his cuff-links, and that he recovered them from Mrs. King. This testimony was objected to upon the ground that it was irrelevant and immaterial, and was not a basis of impeachment of the witnesses Mrs. King, or the plaintiff, or her husband, and that these witnesses could not be impeached by contradictory statements upon a matter not relevant to the issue involved. The plaintiff and her husband denied making the statements attributed to them. It was competent for the defendant to prove by the plaintiff and her husband that they made these statements, and the truth thereof. When they denied making them, it was competent for the defendant to show by other witnesses that the plaintiff and her husband had made these statements and had charged the witness Mrs. King with the larceny of their jewelry. If the witness had stolen this jewelry, she was liable to be indicted for the theft of this property. The plaintiff and her husband thus held a whip over this witness. After the making of these charges by the plaintiff and her husband, Mrs. King turned up as the witness on whom the plaintiff relied to make out her case. She would certainly not volunteer to become a

witness in behalf of the plaintiff after the latter and her husband had charged her with larceny. In these circumstances the jury might well infer that her motive in testifying for the plaintiff arose from fear on her part that the plaintiff and her husband might prosecute her for this larceny, or might expose her by showing that they had recovered from her the property which had been stolen from them by her. If the plaintiff and her husband had testified to these facts, such testimony would tend to discredit the testimony of Mrs. King under the circumstances. The jury might well say that this witness did not appear voluntarily for the plaintiff and make out her case, after the plaintiff and her husband had charged her with the larceny of their property. Anyway such testimony was admissible to show that the witness had a motive in testifying falsely in behalf of the plaintiff. When the plaintiff, her husband, and the witness denied these facts upon their cross-examination as witnesses in this case, it was competent to introduce the above evidence to show that they had made statements contradictory of their denials. In these circumstances these contradictory statements made by the plaintiff and her husband were not irrelevant and immaterial, but were relevant and material on the issue on trial for the purpose of discrediting them. This is so for the reason and by the authorities cited in the first division of this dissent.

3. The majority of the court grant a new trial upon the admission of the testimony dealt with in the 1st and 2d divisions of this dissent. As this evidence was admissible for the purpose of showing that the plaintiff and her husband held a whip over the witness, and as tending to show that the witness was testifying in behalf of the plaintiff for the purpose of currying favor and avoiding prosecution or exposure for this theft, I feel constrained to dissent from the rulings of the majority on this subject, and from the grant of a new trial.

### ON MOTION FOR REHEARING.

GILBERT, J. 1. The defendant in error moves for a rehearing. The judgment refusing a new trial was reversed on the rulings made in the sixth, seventh, and eighth headnotes, all involving the same, or substantially the same, principles of law. The motion for a rehearing argues at length much that was said by Mr. Justice Hines in his dissent, some additional authorities are cited, and there

is some additional argument. The case was carefully considered, and at great length, before this court rendered its decision. The writer of the opinion recognized that the decisions were somewhat close, but, in view of the facts of the case, the majority of the court was of the opinion that the evidence admitted over objection, dealt with in the headnotes mentioned above, was so damaging and injurious to the complaining party that a new trial should be awarded. Movant for a rehearing complains that the ruling in the sixth headnote was not based on the objection to the testimony actually made at the trial. By comparing what is said in the sixth headnote with the record it will be found that the objection stated in the headnote is the precise objection stated in the record as having been made at the trial. Counsel for movant does not correctly construe what the court held. This is doubtless due to language in the headnote. It is needless to repeat the grounds of objection; they are shown in the headnote and repeated in the dissenting opinion. Counsel for movant apparently construes our ruling as being based solely upon an objection that the evidence was not the basis of impeachment of Mrs. King, contending that it was intended as impeachment of Mr. McDermott. We considered the evidence as inadmissible for the impeachment of either of the parties named, and, therefore, that "the admission of this evidence was erroneous." Having made that ruling, a reason was given why it was not a basis for impeaching Mrs. King. It would have made the decision clearer and more complete to have said expressly that it was not a basis for impeaching Mr. or Mrs. McDermott. Movant states that "no objection to said testimony was offered on the ground given in the sixth headnote, that a witness can not be impeached by proof of a specific instance or by an oral charge of larceny in the absence of indictment and the record of conviction." It is true that these words were not used in the objection. The objection was, however, that the testimony was irrelevant and immaterial and not a basis of impeachment of either of the parties named. The facts that it had reference to a specific instance, and was an oral charge of larceny in the absence of indictment and record of conviction, are merely reasons why it is not a basis of impeachment and should not have been admitted. We think it is obvious, if the evidence was immaterial and irrelevant and not a proper basis for the impeachment of Mrs. King, that certainly it is not a basis for the impeach-

ment of either of the McDermotts. If it shows a contradictory statement, it is a statement as to a matter not material to the issue. Movant argues that the court overlooked the opinion of the trial judge overruling the motion for new trial, to the effect that said "impeaching evidence" was neither introduced nor used for the purpose of proving a substantive fact. The opinion of the distinguished and learned trial judge was not overlooked, but a sufficient reply is that the trial judge did not so instruct the jury. Such statement, in an opinion overruling a motion for a new trial, can not be the equivalent of a proper instruction to the jury.

Movant cites a number of authorities holding in effect that "although there may be a ground of objection to testimony which may be good if made, yet, if the objection made be not good, it will be overruled." These decisions are not in conflict with what the court has ruled in this case. We think the objection actually made was good, and that the testimony was injurious to the complaining party.

Movant complains that the court overlooked the testimony of Mrs. King on direct examination by the attorney for Mrs. McDermott, apparently for the purpose of showing that she was not acting under duress, that she had never been accused of taking any of the property of Mr. and Mrs. McDermott. In another part of the motion for rehearing, counsel for defendant in error urges that the testimony was not offered to impeach Mrs. King, but to impeach Mr. McDermott, whereas, in making the argument just mentioned, it would seem the testimony was offered for the purpose also of impeaching Mrs. King.

Movant contends that the court overlooked the case of *McGriff* v. *McGriff*, 154 *Ga.* 560, 567 (115 S. E. 21) : "A party may show anything which may in the slightest degree affect the credit of an opposing witness." The opinion in that case contains an elaborate discussion on the admissibility of evidence similar to that now in question, but an isolated sentence like that referred to is of little value, without considering other portions of the discussion. This is shown by the language used at the bottom of page 567 to wit: "While, generally, the admission of illegal testimony which is wholly immaterial will not furnish a ground for a new trial, it will do so, if it appears of sufficient consequence to injuriously affect the party making the complaint." Other arguments and

contentions made with respect to rulings made in the sixth headnote are mere elaborations of what has already been mentioned.

2. Movant contends that the majority of the court, in making the ruling in the seventh headnote, overlooked a number of decisions of this court. These decisions are to the effect generally that the error of admitting evidence over objection is cured by the admission of other evidence to the same effect without objection. It would require too much space to deal with all of these cases. They all turn upon the particular facts of the case, and in our opinion none of them require a different ruling from that made in this case.

3. Movant complains of the ruling in the eighth headnote, insisting that the court overlooked a fact shown in the ninth ground of the amended motion for a new trial "that the only objection made by counsel for plaintiff in error was that neither Mrs. King nor Mr. or Mrs. McDermott could be impeached upon a matter not relevant to the issue involved," and that the court overlooked the decisions which movant cited and which are mentioned above with reference to the ruling made in the sixth headnote. For the reasons already stated, this ground of the motion for rehearing is without merit.

4. In the nineteenth paragraph of the motion for rehearing the movant complains that in the tenth headnote of the decision of this court it was ruled: "Other grounds of the motion for new trial not specifically dealt with are either controlled by the rulings stated in the preceding headnotes or are of such character as do not require special mention and do not show error." Movant correctly construes that headnote as ruling that the testimony of other witnesses similar in character to that dealt with in the sixth, seventh, and eighth headnotes was also inadmissible, and movant makes the same argument with reference to the tenth headnote as that made with reference to the sixth, seventh, and eighth. The motion for rehearing consists of twenty-two paragraphs, and includes much repetition, because all of the rulings complained of were of like kind, with reference to admissibility of evidence, and the argument for rehearing is substantially the same in each. After again considering all of the questions, in the light of the facts of the case, we think that the case should be remanded for a new trial on the grounds stated in the headnotes agreed to by the majority of the court; and the motion for rehearing is denied.