50772, 50773. CROSS v. THE STATE (two cases).

PANNELL, Presiding Judge.
Appellant was indicted and charged with the offense

of bribery of a police detective, Robert W. Young. He admitted the acts charged and pleaded entrapment as a defense. He was convicted and sentenced to five years. His appeal from the conviction is before this court for a review of numerous enumerations of error, as well as an appeal from the overruling of his extraordinary motion for new trial.

A short time prior to the occurrence under investigation the appellant gave four $50 bills to his co-defendant, Harold Johnson, and told Johnson to give them to Sgt. Wendell McGlamory of the DeKalb County Police Department as a belated Christmas present. McGlamory told Johnson to tell the appellant to take the money back and "cram it." On January 26, 1972, a telephone conversation was had between Johnson and Detective Young and a meeting was set up at a designated location. This conversation between Young and Johnson was intercepted and taped. Detective Young, equipped with a microphone and radio, went to the meeting place where he was introduced to the appellant, and after some discussion the following took place according to Detective Young, quoting appellant: " 'How about let's making a deal, I'll give you $200 now, $200 on the 25th of each month, and if you give me information concerning a known figure I'll get you a bonus, or a piece of pie from him, and I'll handle that.' He then took $200 . . . two $100 bills out of his right pants pocket and gave them to me." This conversation was also taped by two police officers a short distance from the scene. These are the tapes involved in the motion to suppress, which was overruled. There was nothing in the taped conversations that indicated any entrapment. The claim of entrapment was based upon testimony which tended to show the police officers McGlamory and Young were, through others importuning and inviting Cross to pay the money for protection and information as to raids, etc. *Held:*

1. All questions relating to the suppression of certain tapes and testimony and evidence relating thereto were decided adversely to the appellant on his prior appeal. *Cross v. State,* 128 Ga. App. 837 (198 SE2d

338). See also *Cross v. State,* 233 Ga. 960 (214 SE2d 374) transferring the present appeal to this court from the Supreme Court. The constitutional attack upon Code § 26-3006 was disposed of adversely to the appellant in the same case. (Enumeration of errors Nos. 1, 6, 28 and 29).

2. There was no error in overruling the appellant's motion for acquittal based on his denial of a speedy trial. No demand for trial was filed under the provisions of Code § 27-1901. Most of the delay, if it be properly called such, was occasioned by the acts of the defendant in requesting continuances and a prior appeal to this court on the overruling of a motion to suppress evidence. This enumeration of error is controlled adversely to the appellant by the decisions of the Supreme Court of this State in *Hughes v. State,* 228 Ga. 593 (187 SE2d 135). See also *Johnson v. Smith,* 227 Ga. 611 (182 SE2d 101). (Enumeration of errors No. 3).

3. There was no error in overruling the defendant's motion for a judgment of acquittal based upon the failure of the state's two main witnesses to comply with the consent order of the court directing and ordering them to undergo polygraph and truth serum (sodium pentothal) examinations. Nor was there error on the part of the court in vacating such order after the state's two main witnesses had refused to take the test. In our opinion, neither of these tests would have been admissible in evidence, and if admitted in evidence it would have had no probative value. See *Famber v. State,* 134 Ga. App. 112 (213 SE2d 525). If error, no harmful error is shown. The only harm asserted by the defendant is that he submitted certain questions to be asked in the test which disclosed the nature of the defendant's defense. If this was harmful to the defendant he could not complain as he initiated the proposed test-taking and voluntarily submitted the questions. The refusal of the officers to take the test was based upon the requirement that they sign a release from liability in the event they sustained any injuries as a result of the truth serum tests. (Enumeration of errors Nos. 4 and 5).

4. Appellant complains of the failure to grant three motions for mistrial and of the charge of the court to the

jury after overruling one of the motions. On the first occasion the state's witness, W. C. McGlamory was testifying on cross examination by appellant's counsel and was asked the following question: "Q. Now, you knew Bill Cross [appellant] well enough to point him out in that restaurant, didn't you? You had seen him before that time? A. Well as well as I would know any other criminal element by photograph, yes sir." Upon objection made, the court instructed the jury to disregard the statement made and any implication made by the statement, and ascertained from the jury that there was no question as to his instructions. There was no error in his instructions to the jury.

Ordinarily, when illegal testimony is placed in evidence, it is not an abuse of discretion to refuse to grant a mistrial if sufficient corrective instructions are given in ruling the testimony out. *Worthy v. State,* 184 Ga. 402 (3) (191 SE 457); *Stanford v. State,* 201 Ga. 173, 186 (38 SE2d 823); *Fitzgerald v. State,* 82 Ga. App. 521, 525 (61 SE2d 666). This is true even if the illegal testimony has the effect of placing the defendant's character in issue (*Carrigan v. State,* 206 Ga. 707 (3) (58 SE2d 407); *Eden v. State,* 43 Ga. App. 414 (159 SE 134); *Osteen v. State,* 83 Ga. App. 378, 381 (63 SE2d 692)), especially when the testimony is volunteered by the witness and not directly elicited by the solicitor. *Britten v. State,* 221 Ga. 97, 102 (143 SE2d 176); *Waldrop v. State,* 221 Ga. 319, 322 (144 SE2d 372); *Bedgood v. State,* 100 Ga. App. 736, 741 (112 SE2d 430).

The second instance occurred when a defense witness, a former prosecuting attorney, was being questioned on direct examination by appellant's counsel. He needed a file to refresh his recollection and had testified that he made certain notes personally, which were placed in the file. The following occurred: "Q. What did you do at that time after having refreshed your memory? A. I advised Bill Crecelius' secretary at 3:15 PM on Friday, February 4, of the existence of a tape recording in the case. I indicated I would make it available to him on Monday, the 7th of February if he desired. I have also indicated on my bond set in this case, that there was a revocation." A motion for mistrial was made at this point.

The court overruled the motion and no instructions to the jury were given and none requested. There was no intimation from the evidence as to what the word "revocation" referred to. There is nothing indicating it was in reference to the revocation of a probation sentence of the defendant-appellant any more than it could have been in reference to the revocation of his bond in the present case.

In the third situation, the police chief was being questioned by the prosecuting attorney and he was asked the following question and gave the following portion of an answer, at which point objection was made and a motion for mistrial was made: "Q. Did Mr. McGlamory report to you prior attempts of Mr. Cross [appellant] to bribe him? A. Mr. Bell, as best I recall . . ." The trial judge overruled the motion on the basis that there had been prior testimony relating to such an attempt to bribe (which was true) and instructed the jury to disregard the question by the district attorney. No answer was ever given to the question. The motion was renewed after the instructions to the jury. We find no error in the overruling of any of the motions. (Enumerations of error 12, 13, 39 and 45).

5. Complaint is made as to the refusal of the trial judge to permit state witnesses McGlamory and Young to be cross examined in reference to whether the witnesses gave one Blalock (claimed by the defendant to be one who participated in his claimed entrapment) some contraband pills seized in a raid, and in not permitting McGlamory to answer as to whether he had knowledge a mattress was in a back room where McGlamory had worked after the witness had testified he knew nothing about girls being entertained there. Appellant contends this evidence was admissible on his plea of entrapment and that he was entitled to inquire into the state of feelings of the witnesses and as to their relationship to Blalock. Under Code § 38-1712, which provides: "The state of the witness' feelings to the parties, and his relationship, may always be proved for the consideration of the jury." This Code section is clearly inapplicable. Blalock is not a party to the case. Neither does the proffered evidence tend in any way to show entrapment

of the defendant to commit the offense with which he is charged. Further, the trial judge allowed extensive cross examination of these two witnesses' relationship to Blalock. See in this connection *Western &c. R. v. Burnett,* 79 Ga. App. 530, 532 (54 SE2d 357). (Enumeration of errors Nos. 7, 8, 27).

6. Error is enumerated on a number of instances where the trial court sustained objections to questions asked the two chief witnesses for the state, McGlamory and Young, seeking to prove they had committed crimes involving moral turpitude, or lesser crimes, or had associated with known criminals or prostitutes; as well as the sustaining of objections to an offer of proof by defense witnesses that one or the other of the above charges was true.

While a witness may be impeached by competent proof of conviction of a crime involving moral turpitude (*Sheffield v. Hammond,* 41 Ga. App. 76 (1) (151 SE 663)) this competent proof is the record of the witness' conviction or plea of guilty. It is not competent to prove by the witness that he entered a plea of guilty. *Sharpe v. State,* 48 Ga. 16 (3). In the absence of a record of conviction the only proper method, other than by contradictory statements (Code § 38-1803) and disputing facts testified to by the witness (Code § 38-1802) is provided by Code § 38-1804, based upon the general bad reputation by the witness and that for this reason the impeaching witness would not believe the attacked witness under oath. This method was not complied with in the present case, neither may the witness be impeached, over objection by testimony of other witnesses to criminal activities or associations (see, *Western &c. R. Co. v. Vaughan,* 113 Ga. 354 (1) (38 SE 851); *Green v. State,* 125 Ga. 742 (6) (54 SE 724); *Long v. State,* 22 Ga. 40 (2); *Smithwick v. Evans,* 24 Ga. 461)) nor by proof of crime involving moral turpitude in a manner other than by a record of conviction. See *Harvey v. Miller,* 95 Ga. 766 (22 SE 668); *Whitley v. State,* 188 Ga. 177, 179 (5) (3 SE2d 588). See also *Camp v. State,* 3 Ga. 417 (3); *Smithwick v. Evans,* 24 Ga. 461, supra; *Weathers v. Barksdale,* 30 Ga. 888 (2); *Green v. State,* 125 Ga. 742 (6), supra. "The mode of impeaching a witness by proof

of character or reputation is laid down in the code (Penal Code, § 1053; Civil Code, § 5582); the code specifies the questions to be propounded and 'impliedly excludes all others.' *Barnwell v. Hannegan,* 105 Ga. 400 (31 SE 116). See also *Gordon v. Gilmore,* 141 Ga. 348 (7), 349, 350 (80 SE 1007). It provides for impeachment by proof that the 'general character' of a witness is bad, and that from that character the impeaching witness would not believe him on oath; it does not provide for impeachment by proof as to a special kind of character, such as character for chastity, or even veracity. *Barnwell v. Hannegan,* supra. The Supreme Court has held that a woman can not be impeached as a witness by proof of her reputation as a common prostitute. *Smithwick v. Evans,* 24 Ga. 461. Expressions in the decisions of the Supreme Court in *Weathers v. Barksdale,* 30 Ga. 888, and *Black v. State,* 119 Ga. 746 (47 SE 370), not in harmony with that decision, are merely obiter; in both of those cases the court was dealing with exceptions to testimony as to specific acts of lewdness, and held that the testimony was not admissible. The case last cited was a prosecution for rape; and it is held that in such cases, 'independently of the question of the woman's credibility as a witness, the jury may properly consider evidence of her previous character for chastity, in determining whether or not she really consented to the sexual intercourse which she testifies was had against her will.' *Seals v. State,* 114 Ga. 518, 520 (40 SE 731, 88 Am. St. R. 33). See also *Camp v. State,* 3 Ga. 417, 420. In *Cripe v. State,* 4 Ga. App. 832 (62 SE 567), no question was raised in regard to the admissibility of the evidence introduced as to reputation for lewdness; the sole question presented for decision was whether the evidence was sufficient to support the verdict, and it was held that the jury might believe a female witness notwithstanding proof of her reputation for lewdness." *Rudulph v. State,* 16 Ga. App. 353, 354 (7 a) (85 SE 365).

Furthermore, it is generally held that a witness may not be impeached by proof of the commission of specific acts, even though they may constitute a crime. See in this connection *Smiley v. State,* 156 Ga. 60 (3) (118 SE 713); *McDermott v. Lankenau,* 170 Ga. 585 (154 SE 149) where

oral charge of a crime in the absence of a record of conviction, was held inadmissible. (Enumerations of error 9, 10, 11, 14, 16, 17, 19, 20, 21, 25).

7. Several enumerations of error involved a complaint that the trial judge erred in refusing to admit certain testimony allegedly relating to unlawful activities of the state's two chief witnesses. Some of these enumerations are as to evidence which does not do so; some to hearsay testimony; and some of the testimony is direct to the effect that these witnesses accepted bribes from other parties or attempted to secure a pay-off from them *in matters not related to the present case.* There was an instance of direct testimony as to a pay-off which was excluded over objection. The appellant contends this evidence was admissible in order to show the motive, intent, purpose, and bent of mind of the prosecuting witnesses on the occasion under investigation. Appellant contends this evidence is admissible under the provisions of Code § 38-202.

The appellant relies on a number of cases holding evidence of other crimes of the same or similar nature is admissible against a defendant charged and on trial for a crime. The witnesses here are not on trial, nor do the matters sought to be investigated by the ruled-out testimony relate to the issue in the present case.

Code § 38-202 reads as follows: "The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, *unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct."* (Emphasis supplied.) Assuming, without deciding, that the two state's witnesses are equivalent to a party or parties under this section, they being the police officers whose actions resulted in appellant's arrest and charge of bribery, as well as the police officers the appellant contends entrapped him, it does not follow that parol proof that they committed various other crimes, including bribery, meets the test of this Code section. This section applies to criminal as well as civil cases. The decision of the Supreme Court of this State in *Georgia Railroad &c. Co. v. Lybrend,* 99 Ga. 421 (1) (27 SE 794) held: "On the trial of a civil action at which the plaintiff

testifies as a witness in his own behalf, it is competent for the defendant to prove that the plaintiff, in furtherance of this identical cause and for the purpose of prevailing therein, had been guilty of base, dishonorable or criminal conduct. Evidence of this character is admissible in behalf of the defendant, both to discredit the plaintiff as a witness and to throw suspicion upon the justice of his cause of action." As can be seen from reading this holding, evidence of other crimes does not show that the police officers were guilty of base, dishonorable or criminal conduct in furtherance of the "identical cause" before the court in this case. Proof of the police officers' course of dealings with others is not proof of the police officers' course of dealings with the defendant in the present case. See in this connection *Conyers v. Ford,* 111 Ga. 754 (2) (36 SE 947). There was no error in excluding the evidence objected to. (Enumerations of error Nos. 15, 16, 18, 34, 35, 42, 44, 46, 47, 48).

8. Appellant's counsel had the witness for the state, McGlamory, on cross examination when the following occurred: "Q. Now, are you aware of the fact that Chief Hand has given testimony under oath before this Court regarding this order? A. No, sir, I am not. Q. You aware — you are not aware of the fact then that Chief Hand swore under oath that 'Q. Chief, you have been quoted in the news media as saying these two officers volunteered to take these truth serum examinations, is that a fact, did you make that statement? A. Yes, I made the statement not just relating to the truth serum, but to the order as a whole. Q. They agreed to and consented to the order? A. Yes, sir.' That is not the truth according to your testimony? A. No, sir, you are confused. You said the last sentence there, if you would read it again, said the officers agreed and consented to the Court order. I said we didn't agree prior to the court order, sir. Q. But that isn't what Chief Hand said though? A. Would you read it again?"

At this point the trial judge instructed counsel to let the witness read it, which was done. Then the following occurred: "Q. Do you think there is any confusion, now, having read Chief Hand's testimony, that he is swearing

under oath he conferred with you and Mr. Young about this, that you all volunteered to it, and that is the reason the Court issued the order? A. No, sir, there is no difference if you will read the next paragraph on the next page." Appellant claims that the action of the court in requiring him to let the witness read the question from the cross examination of Chief Hand denied him the right of cross examination under Code § 38-1705. We fail to see how what occurred here interfered with appellant's cross examination of the witness. The witness read the question, and appellant's counsel repeated the question and got his answer.

Again, while questioning this same witness about these proposed tests, the following occurred regarding the questions and subject matter of the examination in a document delivered to the doctor: "Q. But you were aware that the original document, or are you now aware of the fact the original of that document was delivered to the doctor at a preliminary meeting with the doctor and myself regarding the formulation of the subject matter in which he was to investigate the examinations? A. I wasn't aware that document — I heard you say a few minutes ago Mr. Bell had taken something to the doctor and advised him not to look at it, to seal it up, and he sealed it. I didn't know what it was. Q. Did it ever occur to you perhaps in view of all these accusations, and so forth, had been made against you, some of which you have alluded to, that perhaps it was some duty on you to vindicate your reputation?" After this point, objection was made to the last question, and the trial court sustained the objection. Appellant's counsel, without comment, proceeded with the examination of the witness. "In order to be in a position to complain of the abridgement of the right of cross-examination, a party to a legal proceeding or his counsel must either ask the questions he desires to ask or state to the court what questions he desires to ask and then interpose timely objection to the ruling of the court denying the right to propound the questions." *Waters v. State,* 80 Ga. App. 104 (3) (55 SE2d 677). No restriction on appellant's right of cross examination appears in this instance.

Robert Goode, Jr., who examined tapes admitted

into evidence, had testified as to tests made by him to determine the source of noise on the tapes and had stated that in his opinion a noise was interference with the signal on recording caused by automobile ignitions or bad brushes on electric motors or the metal enclosure around the transmitter when it rubbed against the body or clothing on whom the transmitter is placed. On cross examination he was asked the following question and gave the following answer: "Q. And you are in no position, not having made any scientific investigation, to determine whether or not this was done in this very case, are you? A. I know of no way that this noise can be interjected on this tape after the tape has been made, is what I testified." One of the attorneys for the appellant desired that the question be read back. It was read back, and the witness answered the question again, when after some discussion it was rephrased and answered as follows: "Q. Not having conducted any scientific test whatever, with the object of determining the cause of the lapse or the noise at the very beginning of this tape, you are unable to state with reasonable scientific certainty the cause of that noise or lapse? A. I am hesitating because I want to be very specific in this. Your question demands this specificness [sic]. I have every reason to believe I know what the noise is there. I have no scientific data to confirm what kind of noise that is."

It is apparent from the above that in the three instances referred to, the appellant was not denied his right of a thorough and sifting cross examination. (Enumerations of error numbers 22, 23, and 31).

9. The remaining enumerations of error are either controlled by the prior rulings herein made, not supported by the record, are without merit, or are expressly abandoned. (Enumerations of error 26, 50, 32, 33, 36, 49, 37, 38, 40, 41, 51, 54, 55, 56, 57, 58, 2, 24, 43, 53).

10. Case Number 50773 is an appeal from the overruling of an extraordinary motion for new trial after an evidentiary hearing before the trial judge. The appellant bases his motion on certain actions of the trial judge, which occurred before the trial and which appellant contends made the trial judge "of counsel" for

the state within the meaning of Code § 24-102, which provides in part that "[n]o judge . . . shall sit in any cause or proceeding . . . in which he has been of counsel . . . without the consent of all parties in interest: Provided, that in all cases in which the presiding judge . . . may have been employed as counsel before his appointment as judge, he shall preside in such cases if the opposite party or counsel agree in writing that he may preside . . . ." Appellant relies upon the holding in *Kennedy v. State,* 38 Ga. App. 122 (142 SE 751), in which the trial judge had acted as solicitor general and had drawn the indictment in the case.

Upon the hearing there was no evidence that the trial judge had acted as counsel for the state at any time. The evidence disclosed the trial judge did, prior to trial, take certain tapes into his possession and have them examined by an expert to see if they had been tampered with, after appellant's counsel had suggested a fear that this had happened; and he also examined a polygraph test of the state's two primary police officer witnesses as to the questions asked on the examination after counsel for appellant had suggested the questions were such as to permit easy evasions in passing the test. The trial judge also, after issuing a warrant for the arrest of a material witness, called a former client of the judge where the witness was supposed to be staying and informed the former client of the fact. The witness then left the state and was unavailable at the trial.

None of these acts shows the trial judge had previously been "of counsel" for the state in any prior proceeding in the case or during the trial. Assuming without deciding that such actions show bias or prejudice on the part of the trial judge, this does not disqualify the trial judge. *Long v. State,* 25 Ga. App. 22 (1) (102 SE 359); *Hendricks v. State,* 34 Ga. App. 508 (130 SE 539); *Elder v. Camp,* 193 Ga. 320 (1) (18 SE2d 622); *Columbian Peanut Co. v. Pope,* 69 Ga. App. 26, 29 (24 SE2d 710); *Smith v. State,* 74 Ga. App. 777, 781 (41 SE2d 541); *Jones v. State,* 219 Ga. 848 (1) (136 SE2d 358).

And should we consider the matter asserted as being error requiring a new trial, the evidence adduced upon the hearing shows appellant was aware of the actions of

the trial judge either before or during the trial and failed to assert these actions, either by motion to disqualify or as grounds for his extraordinary motion for new trial. See *Bell v. State,* 227 Ga. 800, 805 (183 SE2d 357). There was no error in overruling the appellant's extraordinary motion for new trial.

*Judgment affirmed in case No. 50772 and in case No. 50773. Quillian and Clark, JJ., concur.*

ARGUED JUNE 25, 1975 — DECIDED OCTOBER 16, 1975 — REHEARING DENIED NOVEMBER 4, 1975 — ■

*Hendon, Egerton, Harrison & Glean, E. T. Hendon, Jr.,* for appellant.

*Richard Bell, District Attorney, Alton G. Hartley, Assistant District Attorney,* for appellee.